IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

March 08, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
                                    NM
                                    DEPUTY

| | | |
|---|---|---|
| BRANDON LEE ARCOS, KRISTEN AARON ARCOS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. SA:22-CV-01199-OLG |
| STATE FARM LLOYDS, | § § | |
| Defendant. | § | |

---

**STATE FARM LLOYDS' FIRST AMENDED ORIGINAL ANSWER
AND AFFIRMATIVE DEFENSES**

---

Defendant State Farm Lloyds ("State Farm") files its First Amended Original Answer and Affirmative Defenses, and would respectfully show as follows:

## I.    Amended Answer

1.      The allegations in paragraph 1 of Plaintiffs' Original Petition ("Original Petition") do not require a response from State Farm; Plaintiffs' discovery level averment is a nullity due to federal court jurisdiction.

2.      Upon information and belief, State Farm admits the allegations in paragraph 2 of the Original Petition.

3.      With regard to the allegations in paragraph 3 of the Original Petition, State Farm admits that it is a "Lloyds Plan" organized under Chapter 941 of the Texas Insurance code consisting of an unincorporated association of underwriters who are all citizens of the State of Illinois.[1]  State Farm denies it failed to provide Plaintiffs with a certified copy of the insurance policy at issue.  More specifically, State Farm admits that it provided a certified copy of the insurance policy at issue to Plaintiffs' representative public adjuster John Chapman ("Chapman")

---

[1] State Farm refers Plaintiffs to its Notice of Removal and the attached Exhibit B for the identities of the individual underwriters.

on September 1, 2021.  Thus, State Farm denies that it has created the possibility of a misnomer of parties.  State Farm admits that Plaintiffs purchased a homeowners insurance policy from State Farm, issued under Policy No. 83-BD-C440-5 (the "Policy").  State Farm admits that it is doing business in the State of Texas and that it was properly served with citation in this matter.  State Farm denies the remaining allegations in this paragraph.

4.      With regard to the allegations in paragraph 4 (misnumbered as paragraph 3) of the Original Petition, State Farm admits only that the District Court of Medina County, Texas had jurisdiction prior to removal of this case to the Western District of Texas, San Antonio Division. State Farm acknowledges the damages sought by Plaintiffs, but denies that Plaintiffs are entitled to same.  State Farm denies the remaining allegations contained paragraph 4 of the Original Petition.

5.      State Farm denies the allegations contained in paragraph 5 (misnumbered as paragraph 4) of the Original Petition.

6.      With regard to the allegations contained in paragraph 6 (misnumbered as paragraph 5) of the Original Petition, State Farm admits that Plaintiffs' property is situated, and the events giving rise to this lawsuit occurred, in Medina County, but denies that venue is proper in state court.  State Farm admits that venue is property in the United States District Court, Western District of Texas, San Antonio Division.

7.      With regard to the allegations contained in paragraph 7 (misnumbered as paragraph 6) of the Original Petition, State Farm admits that Plaintiffs purchased a homeowners insurance policy from State Farm, issued under Policy No. 83-BD-C440-5 (the "Policy").  The Policy speaks for itself.  State Farm denies the remaining allegations in this paragraph.

8.      With regard to the allegations contained in paragraph 8 (misnumbered as paragraph  7) of the Original Petition, upon information and belief, State Farm admits that

Plaintiffs own the property located at 1711 16th Street, Hondo, Texas 78861 (the "Property). State Farm admits that Plaintiffs purchased a homeowners insurance policy from State Farm, issued under Policy No. 83-BD-C440-5 (the "Policy").

9.      With regard to the allegations contained in paragraph 9 (misnumbered as paragraph 8) of the Original Petition, State Farm admits that a storm reportedly occurred in the vicinity of Plaintiffs' property on or about April 28, 2021. State Farm admits that Plaintiffs filed a claim under the Policy for storm damage to their property to which State Farm assigned the identifying number 53-19C8-91K. State Farm denies the remaining allegations in this paragraph.

10.     With regard to the allegations in paragraph 10 (misnumbered as paragraph 9) of the Original Petition, State Farm admits only that Plaintiffs filed a claim under the Policy for storm damage to their property. State Farm denies the remaining allegations contained in this paragraph.

11.     With regard to the allegations in paragraph 11 (misnumbered as paragraph 10) of the Original Petition, State Farm admits that it made an initial inspection on or about May 4, 2021. State Farm admits that, upon receiving additional information from Plaintiffs' and an estimate prepared by Mr. Chapman, State Farm made a second inspection of Plaintiffs' property with Mr. Chapman on or about June 15, 2021. State Farm admits that it continued to adjust Plaintiffs' claim as supplemental information was provided to State Farm by Plaintiffs and Mr. Chapman. State Farm denies the remaining allegations contained in this paragraph.

12.     State Farm denies the allegations in paragraph 12 (misnumbered as paragraph 11) of the Original Petition.

13.     With regard to the allegations in paragraph 13 (misnumbered as paragraph 12) of the Original Petition, State Farm admits only that Plaintiffs' Policy contained coverage for wind and hail damage, as specified under the terms and conditions of the Policy. State Farm denies the remaining allegations in this paragraph.

14.     State Farm denies the allegations in paragraph 14 (misnumbered as paragraph 13) of the Original Petition.

15.     State Farm denies the allegations in paragraph 15 (misnumbered as paragraph 14) of the Original Petition,

16.     With regard to the allegations contained in paragraph 16 (misnumbered as paragraph 15) of the Original Petition, State Farm admits that Plaintiffs' roof was penetrated by hail in sixteen (16) locations.  State Farm further admits that at the time of is initial investigation, there was a legitimate question as to the habitability of Plaintiffs' home.  State Farm admits that one of the considerations to be made in determining the habitability of a property is whether or not there is a working kitchen and bathroom.  The investigation of a challenging claim such as this is a fluid event with new information being exchanged daily, leading to continued adjustments of the claim and the coverages available under the Policy.  Upon receipt of new information received by State Farm as to the remediation company's demolition efforts exacerbating pre-existing health conditions, State Farm agreed the home was uninhabitable and approved Additional Living Expenses ("ALE") from May 19, 2021 through September 1, 2021.  State Farm admits that Plaintiffs' public adjuster John Chapman submitted a complaint to the Texas Department of Insurance ("TDI"), and that said complaint contained a number of misleading statements quoted out of context without painting the full picture of the situation at that time.  State Farm denies that it misrepresented coverage under the terms of the Policy.  State Farm denies the remaining allegations in this paragraph.

17.     With regard to the allegations contained in paragraph 17 (misnumbered as paragraph 16) of the Original Petition, State Farm admits that Plaintiffs' roof was penetrated by hail in sixteen (16) locations and that there was water intrusion in areas of the home.  State Farm denies the remaining allegations in this paragraph.

18.     State Farm denies the allegations in paragraph 18 (misnumbered as paragraph 17) of the Original Petition.

19.     State Farm denies the allegations contained in paragraph 19 (misnumbered as paragraph 18) of the Original Petition.

20.     With regard to the allegations in paragraph 20 (misnumbered as paragraph 19) of the Original Petition, State Farm admits that three (3) adjusters and a manager were assigned to Plaintiffs' claim over the course of State Farm's investigation of Plaintiffs' claim.  State Farm admits that an initial inspection was performed on May 4, 2021 with a second inspection on June 15, 2021 after the receipt of Mr. Chapman's estimate.  State Farm further admits that at the time of is initial investigation, there was a legitimate question as to the habitability of Plaintiffs' home.  State Farm admits that one of the considerations to be made in determining the habitability of a property is whether or not there is a working kitchen and bathroom.  The investigation of a challenging claim such as this is a fluid event with new information being exchanged daily, leading to continued adjustments of the claim and the coverages available under the Policy.  Upon receipt of new information received by State Farm as to the remediation company's demolition efforts exacerbating pre-existing health conditions, State Farm agreed the home was uninhabitable and approved Additional Living Expenses ("ALE") from May 19, 2021 through September 1, 2021.  State Farm denies the remaining allegations contained in this paragraph.

21.     State Farm denies the allegations in paragraph 21 (misnumbered as paragraph 20) of the Original Petition.

22.     State Farm denies the allegations in paragraph 22 (misnumbered as paragraph 21) of the Original Petition.

23.     State Farm denies the allegations contained in paragraph 23 (misnumbered as paragraph 22) of the Original Petition.

24.     With regard to the allegations contained in paragraph 24 (misnumbered as paragraph 23) of the Original Petition, State Farm admits that an initial inspection was performed on May 4, 2021 with a second inspection on June 15, 2021 after the receipt of Mr. Chapman's estimate.  State Farm admits that during the initial inspection, the adjuster was unable to inspect the underside of the roofing system due to access being barred by Plaintiffs' personal property at the time.  However, despite this initial impediment, State Farm's continuing investigation resulted in a non-biased, fair and equitable evaluation of Plaintiffs' claim.  State Farm denies the remaining allegations in this paragraph.

25.     State Farm denies the allegations in paragraph 25 (misnumbered as paragraph 24) of the Original Petition.

26.     State Farm denies the allegations contained in paragraph 26 (misnumbered as paragraph 25) of the Original Petition.

27.     State Farm denies the allegations contained in paragraph 27 (misnumbered as paragraph 26) of the Original Petition.

28.     State Farm denies the allegations in paragraph 28 (misnumbered as paragraph 27) of the Original Petition.

29.     With regard to the allegations in paragraph 29 (misnumbered as paragraph 28) of the Original Petition, State Farm admits only that Plaintiffs are represented by counsel for the present matter.  State Farm denies the remaining allegations contained in this paragraph.

30.     State Farm denies the allegations contained in paragraph 30 (misnumbered as paragraph 29) of the Original Petition.

31.     State Farm admits the allegations contained in paragraph 31 (misnumbered as paragraph 30) of the Original Petition.

32.     State Farm denies the allegations contained in paragraph 32 (misnumbered as paragraph 31) of the Original Petition.

33.     State Farm denies the allegations contained in paragraph 33 (misnumbered as paragraph 32) of the Original Petition.

34.     State Farm denies the allegations contained in paragraph 34 (misnumbered as paragraph 33) of the Original Petition.

35.     State Farm denies the allegations contained in paragraph 35 (misnumbered as paragraph 34) of the Original Petition.

36.     State Farm denies the allegations contained in paragraph 36 (misnumbered as paragraph 35) of the Original Petition.

37.     State Farm denies the allegations contained in paragraph 37 (misnumbered as paragraph 36) of the Original Petition.

38.     State Farm denies the allegations contained in paragraph 38 (misnumbered as paragraph 37) of the Original Petition.

39.     State Farm denies the allegations contained in paragraph 39 (misnumbered as paragraph 38) of the Original Petition.

40.     State Farm denies the allegations contained in paragraph 40 (misnumbered as paragraph 39) of the Original Petition.

41.     State Farm denies the allegations contained in paragraph 41 (misnumbered as paragraph 40) of the Original Petition.

42.     State Farm denies the allegations contained in paragraph 42 (misnumbered as paragraph 41) of the Original Petition.

43.     With regard to the allegations contained in paragraph 43 (misnumbered as paragraph 42) of the Original Petition, State Farm admits that Plaintiffs purchased a homeowners

insurance policy from State Farm, issued under Policy No. 83-BD-C440-5 (the "Policy"). The Policy speaks for itself. State Farm admits that Plaintiffs filed a claim under the Policy for storm damage to their property. State Farm denies the remaining allegations contained in this paragraph.

44.    State Farm denies the allegations contained in paragraph 44 (misnumbered as paragraph 43) of the Original Petition.

45.    State Farm denies the allegations contained in paragraph 45 (misnumbered as paragraph 44) of the Original Petition.

46.    State Farm denies the allegations contained in paragraph 46 (misnumbered as paragraph 45) of the Original Petition.

47.    With regard to the allegations contained in paragraph 47 (misnumbered as paragraph 46) of the Original Petition, State Farm denies it conducted unfair settlement practices, knowingly or otherwise. State Farm denies the remaining allegations contained in this paragraph.

48.    State Farm denies the allegations contained in paragraph 48 (misnumbered as paragraph 47) of the Original Petition.

49.    State Farm denies the allegations contained in paragraph 49 (misnumbered as paragraph 48) of the Original Petition.

50.    State Farm denies the allegations contained in paragraph 50 (misnumbered as paragraph 49) of the Original Petition

51.    State Farm denies the allegations contained in paragraph 51 (misnumbered as paragraph 50) of the Original Petition

52.    With regard to the allegations in paragraph 52 (misnumbered as paragraph 51) of the Original Petition, State Farm admits only that Plaintiffs are consumers of good and/or services. State Farm denies the remaining allegations contained in this paragraph.

53.    State Farm denies the allegations contained in paragraph 53 (misnumbered as paragraph 52), and each sub-paragraph thereto, of the Original Petition

54.    With regard to the allegations contained in paragraph 54 (misnumbered as paragraph 53) of the Original Petition, State Farm denies it conducted the described acts, knowingly or otherwise.  State Farm denies the allegations contained in this paragraph and denies that Plaintiffs are entitled to the relief sought.

55.    State Farm denies the allegations contained in paragraph 55 (misnumbered as paragraph 54) of the Original Petition.

56.    State Farm denies the allegations contained in paragraph 56 (misnumbered as paragraph 55) of the Original Petition

57.    State Farm denies the allegations contained in paragraph 57 (misnumbered as paragraph 56) of the Original Petition

58.    With the regard to the allegations contained in paragraph 58 (misnumbered as paragraph 57) of the Original Petition, State Farm denies it made false representations as to material facts, knowingly or otherwise.  State Farm denies the remaining allegations in this paragraph.

59.    State Farm denies the allegations contained in paragraph 59 (misnumbered as paragraph 58) of the Original Petition and denies that Plaintiffs' are entitled to the relief sought.

60.    State Farm denies it breached the insurance contract as alleged in paragraph 60 (misnumbered as paragraph 59) of the Original Petition, and denies that Plaintiffs' are entitled to the recovery sought.

61.    State Farm denies it is in noncompliance with the Texas Insurance Code or has conducted unfair settlement practices as alleged in paragraph 61 (misnumbered as paragraph 60) of the Original Petition, and denies that Plaintiffs are entitled to the recovery sought.

62.    State Farm denies it is in noncompliance with the Texas Insurance Code as alleged in paragraph 62 (misnumbered as paragraph 61) of the Original Petition

63.    State Farm denies that it is in beach of the common law duty of good faith and fair dealing as alleged paragraph 32 (misnumbered as paragraph 62) of the Original Petition and denies that Plaintiffs are entitled to the recovery sought.

64.    State Farm denies it has violated the Deceptive Trade Practices Act as alleged in paragraph 64 (misnumbered as paragraph 63) of the Original Petition and denies that Plaintiffs are entitled to the relief sought.

65.    State Farm denies that it has committed fraud as alleged in paragraph 65 (misnumbered as paragraph 64) of the Original Petition, and denies that Plaintiffs are entitled to the recovery sought.

66.    With regard to the allegations contained in paragraph 66 (misnumbered as paragraph 65) of the Original Petition, State Farm admits only that Plaintiffs are represented by counsel for the present matter.  State Farm denies the remaining allegations contained in this paragraph and denies that Plaintiffs are entitled to the recovery sought.

67.    The allegations contained in paragraph 67 (misnumbered as paragraph 66) of the Original Petition do not require a response from State Farm.

68.    State Farm acknowledges that Plaintiffs made a jury demand as stated in paragraph 68 (misnumbered as paragraph 67) of the Original Petition.

69.    State Farm acknowledges that Plaintiffs requested State Farm disclose the information described in Texas Rule of Civil Procedures Rule 194.2(a)-(l) in paragraph 69 (misnumbered as paragraph 68) of the Original Petition, although that request under state court rule is now moot.

70.     With regard to the paragraph, and each sub-paragraph thereto, under the section entitled "**<u>PRAYER</u>**," State Farm denies Plaintiffs are entitled to recover the relief sought.

## II.     <u>Affirmative Defenses</u>

71.     State Farm intends to comply with the terms and conditions of the policy sued on, and State Farm agrees to pay Plaintiffs those monies, if any, to which Plaintiffs are legally entitled to recover as covered damages and as determined by the Court and jury.  State Farm specifically does not agree to waive any right it has under the policy of insurance sued on herein and insists on its rights as contained in said policy, including all terms, conditions, deductibles, limitations on coverage, and exclusions contained therein.

72.     In addition to, and without waiving any of the foregoing, State Farm asserts the following matters as affirmative defenses:

a.     State Farm issued Homeowners Policy Number 83-BD-C440-5 ("the Policy") for the period of June 2, 2020 to June 2, 2021 to Kristen A. and Brandon L. Arcos concerning the property located at 1711 16th Street, Hondo, Texas 78861.  Plaintiffs' recovery under the Policy was subject to a $201,900 limit of liability for the dwelling, a $20,190 limit of liability for other structures, a $151,425 limit of liability for personal property and $60,570 for loss of use. The applicable policy deductible for wind or hail was $2,019.

b.     State Farm asserts all terms, conditions, deductibles, limitations on coverage, and exclusions set out in the Policy.

c.     Pursuant to the following provision of the Policy, coverage is limited to loss which occurs within the time period during which the Policy was in effect:

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I … or *property damage* under Section II that occurs during the period this policy is in effect.

d.    Pursuant to the following provision of the Policy, coverage is limited to accidental direct physical loss:

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. Accidental means happening by chance, unexpectedly, and/or unintended from *your* standpoint. However, loss does not include and *we* will not pay for, any *diminution in value*..

### COVERAGE B - PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I - LOSSES NOT INSURED** or otherwise excluded or limited in this policy.  Accidental means happening by chance, unexpectedly, and/or unintended from *your* standpoint. However, loss does not include and *we* will not pay for, any *diminution in value*.:

[...]

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

e.    Pursuant to the following provisions of the Policy, the following losses do not come within the Dwelling coverage:

## SECTION I – LOSSES NOT INSURED

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread

12

damage, arises from natural or external forces, or occurs as a result of any combination of these:

[…]

g.  wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

[…]

i.  wet or dry rot;

[. . .]

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2.  *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from natural or external forces, or occurs as a result of any combination of these:

[. . .]

g.  **Fungus**, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the ***residence premises*** or location of the rebuilding, repair, or replacement, by ***fungus***;

(2) any remediation of ***fungus***, including the cost to:

(a) remove the ***fungus*** from covered property or to repair, restore, or replace that property; or

(b) tear out and replace any part of the ***building structure*** or other property as needed to gain access to the ***fungus***; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of ***fungus***, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, the presence of ***fungus*** on covered property does not negate coverage for that part of the covered property otherwise damaged by a ***loss insured***.

***

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following:  (a) directly or indirectly cause or contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault or unsoundness in:

      (1)  planning, zoning, development, surveying, or siting;

      (2)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

      (3)  materials used in repair, construction renovation, remodeling, grading, or compaction; or

      (4)  maintenance;

      of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*;

   c. weather conditions.

   However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

f.    Plaintiffs' recovery for Additional Living Expenses under the Policy is subject to and limited by the following provision:

### SECTION I – PROPERTY COVERAGES

**COVERAGE C – LOSS OF USE**

The most *we* will pay for the sum of all losses combined under **Additional Living Expense, Fair Rental Value,** and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense**.  When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months.  *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace he premises;
   b. the time required for *your* house to settle elsewhere; or
   c. 24 months.

14

This period of time is not limited by the expiration of this policy.

*We* will   not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.  Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

g.      Pursuant to the following provision of the Policy, Plaintiffs' recovery under the

Dwelling coverage of the Policy is subject to the following terms, conditions and limitations:

### SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply.  *We* will settle covered property losses according to the following.  However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

### COVERAGE A – DWELLING

1.      **A1 – Replacement Cost Loss Settlement – Similar Construction.**

   a.   *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE – A DWELLING**, except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property.

      (2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

      (3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and give prompt notice to *us* after the work has been completed; and

      (4) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a *building structure* or other structure, except as

provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

    b.   Wood Fences: *We* will pay the ***actual cash value*** for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures**.

    h.   Pursuant to the following provision of the Policy, Plaintiffs' recovery under the Personal Property coverage of the Policy is subject to the following terms, conditions and limitations:

**COVERAGE B – PERSONAL PROPERTY**

1.    **B1 – Limited Replacement Cost Loss Settlement.**

    a.   *We* will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

        (1) until repair or replacement is completed, *we* will pay only the ***actual cash value*** of damaged property;

        (2) after repair or replacement is completed, *we* will pay the difference between the ***actual cash value*** and the cost ***you*** have actually and necessarily spent to repair or replace the property; and

        (3) if property is not repaired or replaced within two years after the date of loses, *we* will pay only the actual cash value.

    b.   *We* will pay market value at the time of loss for:

        (1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

        (2) articles whose age or history contribute substantially to their value including, but not limited to memorabilia, souvenirs, and collectors items; and

        (3) property not useful for its intendent purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

        (1) ***our*** cost to replace at the time of loss;
        (2) the full cost of repair;
        (3) any special limit of liability described in this policy; or
        (4) any applicable Coverage B limit of liability.

i.      Plaintiffs' recovery under the Policy is subject to and limited by the following

conditions:

### SECTION I – CONDITIONS

1.      **Insurable Interest and Limit of Liability.** Even if more than one
person has an insurable interest in the property covered, *we* will not
be liable:

   a.   to the ***insured*** for an amount greater than the ***insured's*** interest;
        or

   b.   for more than the applicable limit of liability.


j.      Plaintiffs failed to comply with the following Conditions of the Policy:

**SECTION I – CONDITIONS**

   [. . .]

2.      **Your Duties After Loss.** After a loss to which this insurance may apply,
***you*** must cooperate with ***us*** in the investigation of the claim and also
see that the following duties are performed:

   […]

   b.   protect the property from further damage or loss and also:

        (1) make reasonable and necessary temporary repairs required to
            protect the property; and

        (2) keep an accurate record of repair expenditures;

   c.   prepare an inventory of damaged or stolen personal property:

        (1) showing in detail the quantity, description, age, replacement
            cost, and amount of loss; and

        (2) attaching all bills, receipts, and related documents that
            substantiate the figures in the inventory;

   d.   as often as ***we*** reasonably require:

        (1) exhibit the damaged property;

        (2) provide ***us*** with any requested records and documents and allow
            ***us*** to make copies;

   e.   submit to ***us***, within 91 days after ***our*** request, ***your*** signed, sworn
        proof of loss that sets forth, to the best of ***your*** knowledge and belief:

        (1) the time and cause of loss;

        (2) interest of the ***insured*** and all others in the property involved and
            all encumbrances on the property;

(3) other insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged structure and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss;

***

**6. Suit Against Us.** No suit or action can be brought unless:

a. there has been compliance with the policy provisions;

b. except as provided in item c. below, suit or action brought against *us* is started within two years and one day after the cause of action accrues;

c. with respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, suit or action brought against *us* is started within the earlier of:

(1) two years from the date *we* accept or reject the claim; or
(2) three years from the date of loss that is the subject of the claim.

k.    Payment for Plaintiffs' claim under the Policy is subject to the following conditions:

**SECTION I - CONDITIONS**

8. **Loss Payment**. *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment.

[…]

10. **Mortgage Clause** (without contribution).

[…]

b. *We* will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the ***Declarations*** as interests appear.

l.    The Policy provides the following terms, conditions, and limitations:

m.      Plaintiffs cannot prevail on their extra-contractual claims unless and until they prove that State Farm has committed a material breach of the Policy; Plaintiffs have not proven that State Farm has committed a material breach of the Policy.

n.      Plaintiffs failed to comply with their duty to mitigate damages.

o.      Plaintiffs failed to comply with all conditions precedent to their right to recover under the homeowner's insurance policy in that they failed to prove that the alleged loss was a covered loss, or they failed to segregate the portion of the alleged loss which they claim was covered from the portion of the alleged loss which they do not assert was covered as required under the doctrine of concurrent causation.

p.      State Farm will assert its right to offset and credit for indemnity amounts already paid to Plaintiffs by either State Farm or other third parties.

q.      Plaintiffs failed to provide State Farm with "notice of claim" pursuant to Sections 542.051(4) and 542.055(a) of the Texas Insurance Code.

r.      Plaintiffs failed to submit all items, statements, and forms required to secure final proof of loss as that term is used in Sec. 542.056 of the Texas Insurance Code.

s.      Plaintiffs failed to provide State Farm with the written notice required by Sec. 541.154 of the Texas Insurance Code and Sec. 17.505 of the Texas Business and Commerce Code.

t.      Plaintiffs' own delays, actions, and omissions in prosecuting this action – which should not inure to their financial benefit – have tolled the accrual of penalty interest under Texas Insurance Code Chapter 542.  Additionally, under equitable principles, Plaintiffs have waived, forfeited, are estopped from asserting, and have otherwise relinquished their entitlement to an 18% penalty under Texas Insurance Code Chapter 542 or any other delay-based or time-based penalty or interest due to Plaintiffs' own discretionary delays and inaction in pursuing relief.

19

u.      State Farm made a settlement offer pursuant to Rule 68 of the Federal Rules of Civil Procedure on January 24, 2022.  Plaintiffs rejected the offer.  State Farm seeks the award of or an allowance for a set-off against a judgment of the reasonable fees.

v.      State Farm made an offer of settlement pursuant to Texas Insurance Code Section 541.156 and Texas Business and Commerce Code Section 17.5052 on November 2, 2022. Plaintiffs rejected the offer.  State Farm pleads the limitations on attorney fees and damages set out in Texas Insurance Code Section 541.156 through 541.161 and Texas Business and Commerce Code Section 17.5052.

w.      State Farm's liability, if any, is limited to the amount of the policy limits under the subject policy, pursuant to the "Limit of Liability" and other clauses contained in the policy sued upon.

x.      Plaintiffs' claim for attorney's fees is barred in whole or in part by the doctrine of excessive demand.  Alternatively, Plaintiffs are not entitled to attorney fees for their breach of contract claim because they did not present the claim as required by Section 38.002 of the Texas Civil Practices & Remedies Code.

y.      Pursuant to §33.003 of the Texas Civil Practice & Remedies Code, as to Plaintiffs' claim for a breach of the duty of good faith and fair dealing, State Farm requests that the trier of fact determine the percentage of responsibility for the Plaintiffs with respect to them causing or contributing to cause in any way the alleged harm for which recovery is sought.

z.      State Farm pleads the limitations on exemplary damages contained in the Texas Civil Practices and Remedies Code, Title 2, §41.001, *et. seq*.  With respect to Plaintiffs' claim for damages, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the

jury, not to exceed $750,000; or (2) $200,000, pursuant to the statutory mandates of Texas Civil Practice & Remedies Code §§ 41.002-41.009.

aa.    A *bona fide*/legitimate dispute exists precluding Plaintiffs' recovery of damages under extra-contractual theories including the common law duty of good faith and fair dealing, and for violations of the Texas Insurance Code or any other statutory or common law authority.

bb.    Unless Plaintiffs prove State Farm's liability for punitive damages, and the amount of punitive damages, if any, by clear and convincing evidence, any award of punitive damages would violate State Farm's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

WHEREFORE, PREMISES CONSIDERED, Defendant State Farm Lloyds respectfully prays for a judgment that Plaintiffs take nothing, that Defendant recover all its costs, and that Defendant be granted all other relief, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

LINDOW STEPHENS SCHULTZ LLP
One Riverwalk Place
700 N. St. Mary's Street, Suite 1700
San Antonio, Texas  78205
Telephone:    (210) 227-2200
Facsimile:    (210) 227-4602
dstephens@lsslaw.com
bnichols@lsslaw.com


David R. Stephens
State Bar No. 19146100
Benjamin C. Nichols
State Bar No. 24032786

COUNSEL FOR DEFENDANT STATE FARM LLOYDS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant State Farm Lloyds' First Amended Answer and Affirmative Defenses was served by facsimile and/or electronic service on the 7th day of March, 2023, upon the following counsel of record:

Shaun W. Hodge
Norman Riedmueller
THE HODGE LAW FIRM, PLLC
The Historic Runge House
1301 Market Street
Galveston, Texas 77550
shodge@hodgefirm.com
nriedmueller@hodgefirm.com

David R. Stephens / Benjamin C. Nichols